UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARK P. HARDIMAN          )
                          )
v.                        )   NO. 2:05-CV-112
                          )
WAYNE ANDERSON, *ET AL.*  )

**MEMORANDUM and ORDER**

Mark P. Hardiman, a state prisoner who was formerly confined in the Sullivan County Detention Center (SCDC), brings this *pro se* civil rights complaint for damages and injunctive relief pursuant to 42 U.S.C. § 1983. The plaintiff is **ASSESSED** the civil filing fee of $250.00. Accordingly, the custodian of the plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of:

> (a) twenty percent (20%) of the average monthly deposits to the plaintiff's' inmate trust account;
>
> or
>
> (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the

filing of the complaint on April 12, 2005. 28 U.S.C. § 1915(b)(1)(A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of the plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $250.00 has been paid to the Clerk's Office. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

To ensure full compliance with the fee-assessment procedures outlined above, the Clerk of Court is **DIRECTED** to send a copy of this memorandum and order to the custodian of inmate accounts at the state facility where the plaintiff is now confined[1] and to Quenton L. White, Commissioner of the Tennessee Department of Correction (TDOC).

In his complaint, the plaintiff alleges two

---

[1] Since filing this case, the plaintiff has since notified the Court that his address has changed to Tiptonville, Tennessee. Presumably, he is now housed in the Northwest Correctional Center, a TDOC facility located in Tiptonville. His transfer from the SCDS, of course, moots any claim for injunctive relief from the conditions at that facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996)

categories of claims. The allegations in the first class of claims involves what the plaintiff characterizes as unsanitary and inhumane living conditions. He contends that he was put on a diet of inadequate nutritional value; that he was forced to sleep on the floor, next to a toilet because of overcrowding in the jail; and that he also was unable to maintain proper hygiene due to inadequate bathing facilities.

The next category of claims, which pertain to the delay or lack of medical care or medications, involve the following factual scenario. When the plaintiff arrived at the SCDC, he informed the booking officer that he had had nothing to eat for over nine hours and that he had not been given his medications. The officer responded that the kitchen was closed and no nurse was on duty after 10:00 p.m. However, when the plaintiff requested a grievance, the officer gave him some cereal and milk and told him that he had found a nurse in the parking lot.

The next morning, the plaintiff appeared in state court and complained to Judge Watson that he was having difficulty obtaining his medications and was having

trouble swallowing.  Judge Watson told two officers who were in court that day to make sure that someone in the medical department checked the plaintiff.  Forty-eight hours later, on March 24, 2005, the plaintiff was seen by defendant Kim Austin, the medical supervisor.  She informed the plaintiff that, due to a wheat allergy, she would put him on a diet and that she would also check on his medication.  He responded that he wanted to be seen by a doctor.  Defendant Austin replied, "Soon."

Early on March 30, 2005, the plaintiff brought his medical concerns to the attention of the nurse who was distributing medication, only to be told that he should have brought more medication with him and that the SCDC would not pay for medications that cost a lot of money. Later that same date, the plaintiff explained to defendant Austin that his medications were ordered by TDOC at Henning, Tennessee, and that the order was still in effect.  The plaintiff gave defendant Austin the medication order number and the facsimile number to verify what he had told her about his medication.  She replied that he would not be housed in the SCDC long enough for her to spend any more time making calls

4

regarding the medication. When the plaintiff responded that he was beginning to have a severe allergic reaction, accompanied by pain and discomfort, she stated, "You'll only be here another five or six days."

At some point, Officer McGuire (who is not named as a defendant) threatened that the plaintiff would be put in "a hole" and beaten if he tried to file a civil action. Under 42 U.S.C. § 1997e(a), a prisoner may not bring a § 1983 civil rights action in federal court until such time as he shall have exhausted his available administrative remedies.[2] *See Brown v. Toombs*, 139 F.3d.1102, 1103-04 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). It is a prisoner's burden to demonstrate exhaustion of those remedies. *Id.,* at 1104. Even where money damages are unavailable through a correctional facility's grievance process, a prisoner must still exhaust his state remedies. *Booth v. Churner*, 531 U.S. 956 (2001); *accord, Freeman v. Francis*, 196 F.3d 641, 643

---

[2] The statute reads: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available shall be exhausted." 42 U.S.C. § 1997e(a).

5

(6th Cir. 1999).

In order to satisfy the requirements of § 1997e(a), "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040 (2000). Satisfaction of this requirement entails filing a grievance concerning each claim stated in the complaint. *See Northington v. DeForest*, 215 F.3d. 1327 (Table, text at 2000 WL 659260 *1 (6th Cir. May 11, 2000) (citing *Brown,* 139 F.3d at 1104)). "A plaintiff who fails to allege exhaustion of administrative remedies with 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (citing *Knuckles El*, 215 F.3d at 642)). Likewise, a complaint containing both exhausted and unexhausted claims must be dismissed. *Jones Bey v. Johnson*, ___ F.3d ___, ___, 2005 WL 1120283 *3 (6th Cir. April 27, 2005).

The Court has reviewed the complaint. In section

6

II, paragraph C of the complaint, the plaintiff alleges that he first filed requests, then grievances, with an Officer, a Lieutenant, and a Major, along with a grievance directed to the medical supervisor, but that he received "negative results from medical (and) no response from (the) Sheriff, (the) Major, and Lieutenant." In the body of his complaint, he asserts that, since March 24, 2005, he has filed numerous requests and grievances pertaining to his serious medical needs and the medication which the medical staff refuses to provide, as well as the overcrowded conditions which have forced him to sleep on the floor and prevented him from maintaining proper hygiene because of inadequate bathing facilities. He further maintains that he has filed grievances with Lt. Dillard, Lt. Salyer, Major Hensley, Sheriff Anderson, stating his concerns regarding medical care and the inhumane living conditions to no avail and that he has also brought his medical concerns to one officer, who simply walked away, and to another officer, who laughed at him. As noted earlier in this discussion, he verbally complained to a nurse and to defendant Austin on March 30, 2005.

By the plaintiff's own allegations, he submitted the first of his series of grievances on March 24, 2005. This complaint was signed and mailed on March 31, 2005. It is questionable as to whether, in the seven days that lapsed between those dates, he could have received responses to the multiple grievances he claims to have filed and, afterwards, could have completed any type of appellate review process, if one existed in connection with SCDC's grievance system.

Even if seven days is a sufficient amount of time to exhaust his administrative remedies, the plaintiff has not appended copies of those grievances. Additionally, the plaintiff does not indicate whether, in his grievance(s), he complained only about not receiving medications, or whether the grievance(s) also involved the failure to refer him to a physician about his difficulty in swallowing and his diet or the specific housing conditions now raised as a federal claim. The Court does not view his statement that he received "negative results from medical" as particularized averments sufficient to satisfy the heightened pleading standard in *Knuckles El* .

8

Moreover, even if exhaustion has occurred in this case, the plaintiff's allegations regarding the housing conditions at the SCDC do not rise to constitutional magnitude.[3] The Eighth Amendment requires that prison conditions not fall below the minimal standards of civilized society. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) ("allegations of two days of discomfort are not sufficient to state a claim of constitutional dimension").

The Court infers, based on the time-line drawn from the plaintiff's allegations, that he was booked into the jail after 10:00 p.m. on March 21, 2005, and that he was housed under the claimed unconstitutional conditions for

---

[3] Exhaustion is not required where a prisoner's allegations do not state a constitutional claim in the first place. *Brown*, 139 F.3d at 1104.

some 9 days before he submitted this instant complaint. Given the length of time the plaintiff was exposed to the conditions alleged in his complaint, he has failed to state a claim which would entitle him to relief under § 1983. *Dellis v. Corr. Corps. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (8th Amendment claim not stated when prisoner deprived of lower bunk, subjected to flooded cell, and deprived of working toilet because prisoner alleged only temporary inconveniences and did not demonstrate that conditions fell beneath minimal civilized measure of life's necessities); *Brodak v. Nichols*, 162 F.3d 1161, 1998 WL 553032, *1 (6th Cir. Aug. 17, 1998) (inmate who allegedly slept on the floor and was exposed to overcrowded conditions for 45 days was not deprived of the minimum civilized measure of life's necessities); *Myrick v. Buchanan*, 929 F.2d 701, 1991 WL 43926, *1 (6th Cir. Apr. 11, 1991) (inmate's alleged exposure to various unconstitutional jail conditions for 18 days, while unpleasant, did not amount to cruel and unusual punishment).

His allegations involving his medical treatment and medications do not state a claim either. The

10

Constitution prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). An Eighth Amendment claim for inadequate medical care has two components: an objective one and a subjective one. *Farmer*, 511 U.S. at 834. The objective component requires the existence of a serious medical condition. *Id.*

Here, while the complaint contains an oblique reference to a wheat allergy,[4] the plaintiff does not specify the medical condition from which he suffers and for which he was denied medications, much less identify the medications used to treat that condition. Though he characterizes his malady as a "serious medical need," absent an allegation as to the nature of that condition, he fails to state a claim for medical mistreatment.

A separate order will enter dismissing this action for failure to state a claim. *See* 28 U.S.C. §

---

[4] Allegedly, defendant Austin informed the plaintiff that he would be placed on a diet due to a wheat allergy, and, later, the plaintiff told her that he was in pain and discomfort and was starting to have a severe allergic reaction.

11

1915(e)(2)(B).

ENTER:

                                          <u>s/Thomas Gray Hull</u>
                                                THOMAS GRAY HULL
                                     SENIOR U. S. DISTRICT JUDGE